## ALEXANDER SINCLAIR v. CHRISTOPHER SINGLETON.

### In Chancery.

This suit was brought in the supreme court for the district of Kentucky, and removed to the court of appeals.

The complainant, on the 17th day of May, in the year 1780, made the following entry with the surveyor of Lincoln county, to wit:

"Alexander Sinclair enters 1,000 acres upon a treasury warrant, on the waters of Dick's river, adjoining the settlement and preemption granted to John Reed, commonly called Givens' place, on the south-east side, extending south-eastwardly as far as the law allows, then south-westwardly for quantity."

Owen Dever, on the 15th day of February, in the year 1780, obtained the following certificate for a pre-emption of 1,000 acres from the commissioners, to wit:

"Owen Dever this day claimed a pre-emption of 1,000 acres of land at the state price, in the district of Kentucky, on account of marking and improving the same in the year 1776, lying on the waters of the Hanging fork of Dick's river, on the lower side of the road leading from this (Harrodsburg) to Logan's fort, to include an improvement made by James Brown, in the year 1772. Satisfactory proof being made to the court, they are of opinion that the said Dever has a right to a pre-emption of 1,000 acres of

Sinclair v. Singleton.

land, to include the said improvement, and that a certificate issue accordingly."

And on the 26th day of April, in the year 1780, obtained the following certificate for 400 acres, to-wit:

"Owen Dever this day claimed a settlement in the district of Kentucky, on account of raising a crop of corn in the country in the year 1776, lying adjoining a pre-emption which he obtained a certificate for the 15th day of February, 1780. Satisfactory proof being made to the court, they are of opinion that the said Dever has a right to a settlement of 400 acres of land, to include the above location, and that a certificate issue accordingly, he having, at the time he obtained his pre-emption, no proof of his being entitled to a settlement."

And having obtained a pre-emption warrant on the 29th of April, in the year 1780, made the following entry with the county surveyor, to wit:

"Owen Dever enters 1,000 acres upon a pre-emption warrant, lying on the waters of the Hanging fork of Dick's river, on the lower side of the trace to Logan's, including an improvement made by James Brown."

And, on the 24th day of June, 1780, also made the following entry with the county surveyor, to-wit:

"Also Owen Dever enters 400 acres upon a certificate for settlement adjoining his pre-emption."

And the said settlement and part of the pre-emption being surveyed in the manner described on the connected plat, Dennis Dever, heir-at-law to Owen Dever, conveyed 300 acres, part of the pre-emption, to the defendant.

The complainant alleged the settlement and pre-emption was surveyed contrary to location, and so as to interfere with his claim.

The settlement and pre-emption of John Reed called for by the entry of the complainant, was granted by the following certificate, to-wit:

"November 6th, 1779. John Reed this day claimed a settlement and pre-emption to a tract of land lying on a branch of Dick's river, about two miles from the Knob lick, lying on the road from this (Harrodsburg) to Logan's, by raising a crop of corn on the premises, in the year 1776. Satisfactory proof being made to the court, they are of opinion that the said Reed has a right to a settlement of 400 acres, including the said improvement, and the pre-emption of 1,000 acres adjoining, and that a certificate issue accordingly."

12

And the entries were made at the time, and in the manner following, to wit:

"November 11th, 1779. John Reed enters 400 acres by virtue of a certificate for settlement, lying on a branch of Dick's river, about two miles from the Knob lick, lying on the road from Harrodsburg to Logan's, Kentucky county."

"John Reed enters a pre-emption warrant of 1,000 acres, adjoining his settlement on the north and east side of the same. Entered the 8th of June, 1780."

The annexed connected plat, No. 29, was returned in this cause, of which the following is an explanation:

No. 29

Sinclair *v.* Singleton.

A B C· D E F G H, represents Owen Dever's pre-emption survey of 799 acres. I K L A M N O, Alexander St. Clair's survey of 1,000 acres, made on treasury warrant, March 12th, 1792. P Q R S T H, Dennis Dever, heir-at-law to Owen Dever, deceased, settlement survey of 400 acres. V D E U, George Givens' pre-emption survey of 400 acres. *a b c d*, Patrick Shone's settlement survey of 400 acres. K W X Y, John Reed's settlement survey of 400 acres. 1 1 1 1, 760 acres, part of pre-emption survey of do. A·L, 2 2, 240 acres, balance of the above pre-emption. A B C, 3 3, Christopher Singleton's 300 acres. ℘ O, Dever's spring shown by James Brown, where he built a cabin, for which Owen Dever obtained a settlement and pre-emption. 4 4, the trace to Logan's old fort. 5 5, Hanging fork of Dick's river. 6 6, waters of do. The 7s, Dougherty's run, waters of Clarke's creek.

The parties agreed to the following facts :

. That the place designated in the connected plat in the cause thus ‡‡ D, is the improvement called for in the certificate granted to Owen Dever, and is the improvement called for in the said Dever's certificate and entries.

That the place designated in the connected plat thus II R, in John Reed's settlement, is the said Reed's improvement, and for which he obtained from the commissioners his settlement and preemption, and is the said claim which the complainant's entry calls to adjoin.

That the dotted line marked thus 4 4, is the trace or road· called for in the said Owen Dever's certificate and entries.

By THE COURT.—Upon considering this cause two questions arise. *First.* Whether the defendant, whose claim is of superior dignity to the complainant's, has surveyed his pre-emption agreeably to location. *Second.* Whether the complainant has surveyed his claim agreeably to location.

On the first question it appears, by the defendant's certificate and entry with the surveyor, that his pre-emption is located on the waters of the Hanging fork of Dick's river, on the lower side of the road leading from Harrodsburg to Logan's fort, to include an improvement made by James Brown in 1772. It also appears, from the connected plat returned in this cause, wherein the said road and improvement are laid down and admitted by the parties, that the defendant has surveyed a considerable part of his preemption on the upper side, which is contrary to the express words of the location ; in conformity to which the court is of opinion

that the defendant's pre-emption ought to have been surveyed in a square, on the lower or east side of the road, and binding thereon, and running at right angles from the general course of so much of the said road as will be occupied by the said pre-emption, including the improvement in the center between the north and southern boundaries.

On the second question it appears that the complainant entered 1,000 acres of land with the surveyor of Lincoln county, on the waters of Dick's river, adjoining the settlement and pre-emption belonging to John Reed, on the south-east side, extending south-eastwardly as far as the law allows, then south-westwardly for quantity. It also appears that the complainant's entry was made subsequent to the date of Reed's settlement survey, and therefore the call to adjoin the settlement must mean the survey of the settlement as made, and not as it should have been made.

It appears also that Reed, in his pre-emption entry, calls to lie on the north and east sides of his settlement, by which, it seems to the court, that the pre-emption ought to adjoin the settlement in equal proportions on those sides in one survey, and not in two surveys, as laid down in the surveyor's report.

The situation of Reed's settlement and pre-emption being thus fixed, and the entry of the complainant's calling to adjoin them on the south-east, etc., it remains to be considered in what manner the complainant ought to adjoin, and here the court is of opinion that the call to adjoin Reed's settlement and pre-emption on the south-east side, being intended by the complainant only as a description of the relative situation of his land, the complainant ought to lay off his claim three times as long as wide, agreeably to his entry, beginning at the south-east corner of John Reed's pre-emption, and running south-east from thence, and then south-westwardly for quantity, the length of the complainant's survey, to be determined by a line running from the center of a line extended from the beginning, to the point where the third line of the complainant's survey shall intersect the line of Reed's settlement and pre-emption, to the center of the complainant's second line.

From the above opinion the Honorable Caleb Wallace delivered his dissent in writing, in the following words, to wit: To ascertain how the complainant's survey should have been made, I am of opinion that John Reed's pre-emption should be laid off to adjoin his settlement, when laid off, agreeably to location, and not as has been surveyed.

Sinclair *v.* Singleton.

*First.* Because Reed's survey not having been made three months before the complainant's location, it ought not to be presumed that the plat and certificate of survey was recorded at the time the location was made; and as it appears from the land law, and the nature of the case, that a survey, before it is recorded, may be altered and amended in any manner the owner may direct, or the surveyor find necessary. It seems to me the owner can not be bound thereby while it is in that stage, and consequently that a locator ought not to be bound by it, unless he expressly calls for it.

*Secondly.* Because it appears from the land law that locators ought not to be presumed to have knowledge of any claim to land which is not of record.

*Thirdly.* Because it being provided in the land law that all claims to land, which originated under the present government, should be recorded in the entry books of the surveyors, they can not be changed but by a record, made in the same or some other book, which the surveyors are likewise required to keep.

Whereupon, it is decreed and ordered, that the complainant do recover of the defendant, all the lands which will be included by a survey, when run agreeably to the foregoing opinion of the court, and which is now included in his present survey. And it is further decreed and ordered, that James Thompson, of the county of Lincoln, do go on the lands in controversy, on the ———— day of ———— next, if fair, if not then on the next fair day, and there lay off, circumscribe and mark, by certain metes and bounds, the lands aforesaid, agreeably to the above recited decree, and make report thereof to the 24th day of the next term, in order to enable the court to make a final decree herein, and the direction as to the costs are reserved until the coming in of the said report.

This cause was, in consequence of the original jurisdiction of the court of appeals having been taken away, removed to the district court, held in Danville, before a final decree was pronounced.

And at the April term of the said district court, in the year 1798, the following decree was there pronounced:

BY THE COURT.—Whereas, by the act of the general assembly of the commonwealth, establishing district courts, it is directed that the clerk of the court of appeals shall certify to the clerk of the district court, the situation of any suit removed from the court of appeals to the district court, on the rule or trial docket of said court; and the steps that have been taken in the said court, which

shall be a guide to the clerk of the district court, who shall place the said suit on his docket, as nearly as may be in the same situation it stood on the docket in the court of appeals. And, whereas, a suit in which Alexander Sinclair is plaintiff, and Christopher Singleton is defendant, has been removed from the court of appeals to the Danville district court, and the situation of the said suit being an interlocutory decree on the docket of the court of appeals, has been placed on the docket of this court at the same state of proceedings, and a motion being made before me for a final decree, and having taken time to consider, I am of opinion that the act of assembly does not contemplate a rehearing of the merits of the cause, circumstanced as the present is, by the judges of the district court, consequently it becomes the province of the court, in the present instance, merely to approbate the proceedings necessary to make the decree of the court of appeals final; and as my approbation is to give the final stamp to the said decree, and as it is probable that questions similar to those determined upon by the court of appeals in this case, may hereafter originate in this court, I wish it to be understood that, as I am now informed, I do not approve the principles which seem to have governed the court of appeals in the suit before mentioned. But, for the reasons before given, it is decreed and ordered, that the said defendant do, on or before the first day of June next, convey to the complainant, by deed with special warranty, the land contained within the following boundaries, etc., containing 184 acres, and yield and deliver up possession, etc.